IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| NICOLE WILLIAMSON, | § | |
| individually and on behalf of all | § | |
| others similarly situated, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:21-CV-1599-L-BH |
| | § | |
| IRVING K MOTOR COMPANY LLC | § | |
| D/B/A CLAY COOLEY KIA, | § | |
| Defendant. | § | Referred to U.S. Magistrate Judge[1] |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Before the Court is *Defendant Irving K Motor Company LLC's Motion to Dismiss First Amended Class Action Complaint Pursuant to Rules 12(b)(1) and 12(b)(6) and Brief in Support*, filed September 13, 2021 (doc. 15).  Based upon the relevant filings and applicable law, the motion should be **DENIED**.

## I.  BACKGROUND

Nicole Williamson (Plaintiff) brings this putative class action against Irving K Motor Company LLC d/b/a Clay Cooley KIA (Defendant), for alleged violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227(b) (TCPA). (doc. 12 at 1.)[2]

From 2017 through 2020, Defendant utilized four telephone numbers[3] to transmit "multiple prerecorded voice messages" to Plaintiff's cellular telephone number. (*Id.* at 2.)  Each prerecorded voice message attempted to sell Plaintiff a vehicle from Defendant's inventory, and included music

---

[1]By order dated January 31, 2022 (doc. 31), this case has been referred for pretrial management.

[2]Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

[3]972-659-2204; 972-721-4300; 469-447-8212; and 469-480-5500. (doc. 12 at 2.)

and Defendant's marketing slogan: "[S]hop me first, shop me last, either way, come see Clay!". (*Id.* at 3.) On January 29, 2018, "Defendant sent Plaintiff a prerecorded voice message from telephone number 972-659-2204 which identified 'the service department of Clay Cooley KIA' and sought for Plaintiff to have her vehicle serviced by Defendant." (*Id.*)

Plaintiff alleges that Defendant also sent similar prerecorded messages to individuals residing within this judicial district. (*Id.*) She references four anonymous complaints on the Internet complaining about receiving robocalls from Defendant from phone numbers 469-447-8212 and 469-480-5500. (*Id.* at 3-4.) She contends that the calls "constitute telemarketing/advertising because they promoted Defendant's business, goods and services, including the sale of vehicles and [its] vehicle maintenance and repair services." (*Id.* at 3.) She also contends that these calls "violated [her] substantive rights under the TCPA to be free from unsolicited calls;" caused her harm, including invasion of privacy, aggravation, and annoyance; inconvenienced her; and disrupted her daily life. (*Id.* at 4.)

Plaintiff's first amended complaint alleges that Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii) of the TCPA, and 47 C.F.R. §§ 64.1200(a)(1)(iii) and 64.1200(a)(2) of its implementing regulations, "by using prerecorded messages to make non-emergency telephone calls to the telephones of Plaintiff and the other members of the putative Class[4] without their prior express written consent." (*Id.* at 7.) It also alleges that the violations were "willful or knowing" because Defendant "knew that it did not have prior express consent to make these calls, and knew or should have known that it was using prerecorded messages." (*Id.*) It seeks actual and statutory damages

---

[4]The proposed class is defined as "[a]ll persons in the United States who, within four years prior to the filing of this action, were sent an artificial or prerecorded voice call, from Defendant or anyone on Defendant's behalf, to said persons [sic] telephone number, promoting Defendant's property, goods, and/or services." (doc. 12 at 4.)

for Plaintiff and each member of the Class, including "up to $1,500.00 for each and every violation pursuant to 47 U.S.C. § 227(b)(3)," an order declaring that Defendant's actions violated the TCPA, and an injunction requiring it "to cease all unsolicited call activity without obtaining consent first, and to otherwise protect the interests of the Class." (*Id.* at 8.)

On September 13, 2021, Defendant moved to dismiss Plaintiff's first amended complaint. (doc. 15.)  Plaintiff responded on October 4, 2021, and Defendant replied on October 18, 2021. (docs. 19, 26.)

## II.  RULE 12(b)(1)

Defendant first moves to dismiss Plaintiff's first amended complaint under Rule 12(b)(1) for lack of subject-matter jurisdiction, arguing the entire action is based on violations of an unconstitutional and void statute. (doc. 15 at 8-16.)

### A.  <u>Legal Standard</u>

A motion to dismiss under Rule 12(b)(1) challenges a federal court's subject-matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). Federal courts are courts of limited jurisdiction; without jurisdiction conferred by the Constitution and statute, they lack the power to adjudicate claims. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). They "must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001).

A Rule 12(b)(1) motion "may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006). A court must dismiss the action if it determines that it lacks jurisdiction over the

subject matter. Fed. R. Civ. P. 12(h)(3); *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam). A dismissal under Rule 12(b)(1) "is not a determination of the merits," and it "does not prevent the plaintiff from pursuing a claim in a court that does have proper jurisdiction." *Id.* Accordingly, considering Rule 12(b)(1) motions first "prevents a court without jurisdiction from prematurely dismissing a case with prejudice." *Id.*

The district court may dismiss for lack of subject matter jurisdiction based on (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981). A motion to dismiss based on the complaint alone presents a "facial attack" that requires the court to merely decide whether the allegations in the complaint, which are presumed to be true, sufficiently state a basis for subject matter jurisdiction. *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1998). "If sufficient, those allegations alone provide jurisdiction." *Id.* Facial attacks are usually made early in the proceedings. *Id.* "A facial attack requires the court merely to decide if the plaintiff has correctly alleged a basis for subject matter jurisdiction" by examining the allegations in the complaint, which are presumed to be true. *Rodriguez v. Tex. Comm'n on the Arts*, 992 F. Supp. 876, 878 (N.D. Tex. 1998) (citations omitted).

If the defendant supports the motion with evidence, however, then the attack is "factual" and "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional

4

claims." *Williamson*, 645 F.2d at 413. A factual attack may occur at any stage of the proceedings. *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980). Regardless of the nature of attack, the party asserting federal jurisdiction continually carries the burden of proof to show it exists. *Ramming*, 281 F.3d at 161.

Here, Defendant's motion to dismiss for lack of subject-matter jurisdiction relies solely on Plaintiff's first amended complaint. (*See* doc. 15.) The motion therefore presents a facial attack that does not require the resolution of factual matters outside the pleadings. *See Williamson*, 645 F.2d at 412-13.

**B.    TCPA's Robocall Restriction**

Defendant argues that Supreme Court's decision in *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 140 S. Ct. 2335, 2344 (2020) (*AAPC*), deprives the Court of subject-matter jurisdiction over Plaintiff's claim because the alleged calls at issue occurred at the time when § 227(b)(1)(A)(iii) of the TCPA was unconstitutional. (doc. 15 at 11-16.)

In 1991, Congress passed the TCPA in response to "a torrent of vociferous consumer complaints about intrusive robocalls." *AAPC*, 140 S. Ct. at 2344.  The Act imposes various restrictions on the use of automated telephone equipment and artificial or prerecorded voice messages and directs the Federal Communications Commission (FCC) to implement regulations to enforce its provisions. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 371 (2012).  Section 227(b)(3) of the TCPA creates a private right of action for persons seeking redress for violations of the Act or of the FCC's implementing regulations. *See* 47 U.S.C. § 227(b)(3).  As relevant here, a separate provision of the TCPA makes it unlawful for any person "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any

automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service for which the called party is charged for the call." 47 U.S.C. § 227(b)(1)(A)(iii). This provision "generally prohibits robocalls to cell phones and home phones." *AAPC*, 140 S. Ct. at 2343.

In 2015, Congress amended the TCPA by adding an exception for robocalls "made solely to collect a debt owed to or guaranteed by the United States." Bipartisan Budget Act of 2015, Pub. L. 114-74, 129 Stat. 588. Five years later, in *AAPC*, the Supreme Court addressed the constitutionality of the 2015 amendment to the TCPA. *See AAPC*, 140 S. Ct. at 2344. Six justices concluded that the government-debt exception added in 2015 was an unconstitutional content-based restriction on speech that failed strict scrutiny. *Id.* at 2343, 2346. Seven justices determined that the 2015 amendment should be invalidated and severed from the robocall restriction, as "the remainder of the law is capable of functioning independently and thus would be fully operative as a law." *Id.* at 2343-44, 2353. In a footnote, the plurality opinion also stated:

> As the Government acknowledges, although our decision means the end of the government-debt exception, no one should be penalized or held liable for making robocalls to collect government debt after the effective date of the 2015 government-debt exception and before the entry of final judgment by the District Court on remand in this case, or such date that the lower courts determine is appropriate. On the other side of the ledger, our decision today does not negate the liability of parties who made robocalls covered by the robocall restriction.

*Id.* at 2355 n.12 (citation omitted).

"While it is clear that a majority held the government-debt exception clause unconstitutional and a different majority held the clause severable, there is no authoritative opinion addressing whether severability was retroactive. In doctrinal terms, *AAPC* did not answer the precise question of whether the robocall restriction is enforceable for calls made between 2015 and 2020, during

which time the statute included the unconstitutional government-debt exception." *Callier v. MultiPlan, Inc.*, No. EP-20-CV-00318-FM, 2021 WL 8053527, at *11 (W.D. Tex. Aug. 26, 2021). Federal courts have disagreed about whether the entire robocall restriction was enforceable for the period between the enactment of the government-debt exception and the Supreme Court's decision in *AAPC*. *See Horton v. Multiplan, Inc.*, No. 3:21-CV-1542-S-BK, 2021 WL 5868328, at *2-3 (N.D. Tex. Nov. 24, 2021), *adopted by* 2021 WL 5866893 (N.D. Tex. Dec. 10, 2021) (citing cases).

## C.    Substantiality of Claim

"Dismissal for lack of subject-matter jurisdiction because of the inadequacy of the federal claim is proper only when the claim is 'so insubstantial, implausible, foreclosed by prior decisions of [the Supreme] Court, or otherwise completely devoid of merit as not to involve a federal controversy.'" *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (quoting *Oneida Indian Nation v. Cnty. of Oneida, N.Y.*, 414 U.S. 661, 666 (1974)).  A district court has jurisdiction when the plaintiff's right to recover under the complaint "will be sustained if the Constitution and laws of the United States are given one construction and will be defeated if they are given another." *Bell v. Hood*, 327 U.S. 678, 685 (1946). "So long as a complaint is drafted 'to seek recovery directly under the Constitution or laws of the United States,' a 'failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction.'" *Stem v. Gomez*, 813 F.3d 205, 210 (5th Cir. 2016) (quoting *Bell*, 327 U.S. at 681-82). "[T]he absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction." *Steel Co.*, 523 U.S. at 89.

Here, Defendant argues that Plaintiff's lawsuit should be dismissed for lack of subject-matter jurisdiction because § 227(b)(1)(A)(iii) was unenforceable at the time the alleged calls were made.

(*See* doc. 15 at 11-16.)  Jurisdiction "arises not from the provision declared unconstitutional in *AAPC*[, however,] but from the private cause of action in section 227(b)(3) that grants [Plaintiff] standing to bring her claims." *Hogans v. Charter Commc'ns, Inc.*, —— F. Supp.3d ——, No. 5:20-CV-566-D, 2021 WL 4391226, at *6 (E.D.N.C. Sept. 24, 2021); *see also Mims*, 565 U.S. at 376 (holding that § 227(b)(3) provides federal and state courts with concurrent jurisdiction over private suits arising under the TCPA).  Whether Plaintiff asserts a plausible claim for relief against Defendant for violating § 227(b)(1)(A)(iii) while it was enforceable is a question that implicates the existence of a federal claim, not subject-matter jurisdiction. *See Steel*, 523 U.S. at 89.  When, as here, "a defendant's challenge to the court's jurisdiction is also a challenge to the existence of a federal cause of action, the proper procedure for the district court is to find that jurisdiction exists and to deal with the objection as a direct attack on the merits of the plaintiff's case." *Daigle v. Opelousas Health Care, Inc.*, 774 F.2d 1344, 1347 (5th Cir. 1985); *see, e.g., Lindenbaum v. Realgy, LLC*, 13 F.4th 524, 527-28 (6th Cir. 2021) (reviewing similar challenge to the substantiality of a retroactive TCPA claim raised in a motion to dismiss under Rule 12(b)(1) as one under Rule 12(b)(6)); *Hogans*, —— F. Supp.3d ——, 2021 WL 4391226, at *6 ("Whether *AAPC* renders Hogans's claims invalid is disputed and does not so conclusively foreclose Hogans's claims as to warrant dismissal for lack of subject-matter jurisdiction. Instead, the court can address the issue 'by the other mechanisms provided by the federal rules.'") (citations omitted).[5]

---

[5]Although no court from this circuit has addressed whether a Rule 12(b)(1) motion is the proper procedural vehicle to challenge the constitutionality of enforcing TCPA's robocall restriction retroactively, "[t]he Supreme Court has repeatedly instructed that we must avoid conflating the question of whether we have subject matter jurisdiction to consider a claim with the determination of whether the plaintiff has stated a valid claim for relief." *Smith v. Reg'l Transit Auth.*, 756 F.3d 340, 344 (5th Cir. 2014) (citing *Arbaugh*, 546 U.S. at 510-11).  "Courts must thus draw fine lines, even if to some distinction between a dismissal for lack of jurisdiction and dismissal for failure to state a claim upon which relief can be granted is 'an exercise in semantics'." *Southpark Square*, 565 F.2d at 343 (citation omitted).  Notably, courts outside this circuit, including the Sixth Circuit, have considered similar arguments for dismissal for lack of jurisdiction under the Rule 12(b)(6) standard. *See, e.g., Lindenbaum*, 13 F.4th at 527-28; *Hogans*, 2021 WL 4391226,

### III.  RULE 12(b)(6)

As noted, Defendant also moves to dismiss Plaintiff's first amended complaint under Rule 12(b)(6) for failure to state a claim. (doc. 15 at 16.)

### A.    <u>Legal Standard</u>

Rule 12(b)(6) allows motions to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).  Under the 12(b)(6) standard, a court cannot look beyond the face of the pleadings. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996); *see also Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000).

Pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992).  The court must accept those well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Baker*, 75 F.3d at 196. "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citation omitted).  Nevertheless, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action's elements will not do." *Id.* at 555; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions").  The alleged facts must "raise a right to relief above

---

at *6; *Canady*, 2022 WL 194526, at *2 ("Although Bridgecrest argues that is entitled to judgment on the pleadings due to a lack of subject-matter jurisdiction, the Court views Bridgecrest's arguments as better characterized as being based on the lack of a plausible claim for relief."); *Shen v. Tricolor California Auto Grp., LLC*, No. CV 20-7419 PA (AGRX), 2020 WL 7705888, at *2-3 (C.D. Cal. Dec. 17, 2020) ("The Court therefore appears to possess subject matter jurisdiction over this action even if Defendant is correct that Plaintiff's individual claim is not viable because it seeks to enforce an unconstitutional statutory provision. Instead, although not presented as such, Defendant's Motion to Dismiss could also be construed under Federal Rule of Civil Procedure 12(b)(6)."); *Pavelka v. Charter Commc'ns, Inc.*, No. 3:20-CV-01557 (MPS), 2021 WL 5566390, at *3 (D. Conn. Nov. 29, 2021) ("[D]ismissal for lack of subject-matter jurisdiction is inappropriate here. Instead, the Court will treat the defendant's motion as one under Rule 12(b)(6).").

the speculative level." *Twombly*, 550 U.S. at 555. In short, a complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570.

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the miscon-duct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (citations omitted). When plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570; *accord Iqbal*, 556 U.S. at 678.

## B.    <u>Constitutionality of § 227(b)(1)(A)(iii)</u>

Defendant argues that Plaintiff's lawsuit is based on alleged violations of § 227(b)(1)(A)(iii) when it was "constitutionally deficient and thus unenforceable," and that it cannot be held liable for violations of "an unconstitutional and void statute." (doc. 15 at 12.)

As noted, federal courts have disagreed on the retroactive effect of severing the government-debt exception from the TCPA. While the Fifth Circuit has not yet addressed this issue, it was recently considered by the Sixth Circuit, which agreed with the majority view that *AAPC* applies retroactively and that the unaltered robocall restriction remained in effect between 2015 and 2020. *See Lindenbaum v. Realgy, LLC*, 13 F.4th 524, 528 (6th Cir. 2021). This majority includes the Northern, Southern, and Western Districts of Texas, which have found that § 227(b)(1)(A)(iii), minus the government-debt exception, applies retroactively to cover claims alleging robocall violations between 2015 and 2020. *See. e.g., Cano v. Assured Auto Grp.*, No. 3:20-CV-3501-G, 2021 WL 3036933, at *8-9 (N.D. Tex. July 19, 2021); *Horton*, 2021 WL 5868328, at *3 ("In order to

10

maintain Congress's intent in creating the TCPA, the Court concludes here that the government-debt exception is severable from the rest of section 227(b)(1)(A)(iii). Thus, the section retroactively applies to cover other types of robocalls made from 2015 to 2020."); *Callier*, 2021 WL 8053527, at *13 ("[T]he appropriate remedy for the conferral of an unconstitutional benefit is for the government to be denied this exception, rather than raze a whole statute and deny the TCPA's protection to all individuals."); *Samataro v. Keller Williams Realty, Inc.*, No. 1:18-CV-775-RP, 2021 WL 4927422, at *4 (W.D. Tex. Sept. 27, 2021) ("The Court will follow the majority of courts who have held that the government-debt exception was severable."); *Thomas v. Life Protect 24/7 Inc.*, ––– F. Supp.3d ––––, 2021 WL 4127144, at *6-7 (S.D. Tex. Sept. 10, 2021) ("That the exception was also found to be severable further confirms that its unconstitutional nature didn't infect the constitutionality of the remainder of the TCPA—all of which was language enacted on a stand-alone basis well prior to the exception."); *Pepper v. Life Protect 24/7, Inc.*, No. 4:20-CV-02154, 2021 WL 4084514, at *3 n.2 (S.D. Tex. Mar. 1, 2021) ("Parties are still liable for the portion of the statute that was held to be constitutional even if it is alleged to have taken place before the court ruled in [*AAPC*]."); *see also Canady v. Bridgecrest Acceptance Corp.*, No. CV-19-04738-PHX-DWL, 2020 WL 5249263, at *2 (D. Ariz. Sept. 3, 2020) ("Although [*AAPC*] struck down a part of the TCPA not at issue in this case, the bulk of the TCPA lives on."); *Stoutt v. Travis Credit Union*, No. 2:20-CV-01280 WBS AC, 2021 WL 99636, at *5 (E.D. Cal. Jan. 12, 2021) ("Because the Supreme Court has invalidated and severed the government-debt exception from the remainder of § 227(b)(1)(A)(iii), the exception did not affect the remainder of the statute and the statute remains enforceable, at least against non-government debt collectors, as to calls made between November 2015 and July 6, 2020."); *Abramson v. Fed. Ins. Co.*, No. 8:19-CV-2523-T-60AAS, 2020 WL

7318953, at *2 (M.D. Fla. Dec. 11, 2020) ("[T]he vast majority of cases this Court has reviewed conclude that parties may continue to bring claims under the portions of § 227(b) unaltered by *AAPC*.").

A small number of district courts, including the Eastern Districts of Texas and Louisiana, have held that the entire robocall restriction was unconstitutional while the 2015 amendment was in place. *See, e.g., Creasy v. Charter Commc'ns, Inc.*, 489 F. Supp. 3d 499, 502-03 (E.D. La. 2020) ("[T]he entirety of the pre-severance version of § 227(b)(1)(A)(iii) is void because it itself was repugnant to the Constitution before the Supreme Court restored it to constitutional health in *AAPC*."); *Cunningham v. Matrix Fin. Servs., LLC*, 531 F. Supp. 3d 1164, 1180-81 (E.D. Tex. 2021) (concluding that § 227(b)(1)(A)(iii) "was unconstitutional from the moment Congress enacted the government-debt exception until the Supreme Court handed down its decision in *AAPC*" and the entire provision had "no legal effect" during that stretch of time).

Defendant argues that the Court should follow the minority view that the entire robocall restriction was unenforceable "from the time of the exception's enactment until the Supreme Court's decision." This position, however, "is squarely contradictory to *AAPC*." *See Cano*, 2021 WL 3036933, at 8. As discussed, the Supreme Court found the government-debt exception to the TCPA was unconstitutional, but instead of invalidating the entire robocall restriction, it applied "traditional severability principles" and concluded that the proper course was to "sever the 2015 government-debt exception and leave in place the longstanding robocall restriction." *AAPC*, 140 S. Ct. at 2355. It noted that the Act included a severability clause and explained that there is a presumption that "an unconstitutional provision in a law is severable from the remainder of the law or statute." *Id.* at 2350. When an unconstitutional amendment has been added to a valid law, the

12

"original, pre-amendment statute" is treated as the "'valid expression of the legislative intent.'" *Id.*

(quoting *Frost v. Corporation Comm'n of Okla.*, 278 U.S. 515, 526-27 (1929)). This is because the

unconstitutional amendment "is a nullity and, therefore, powerless to work any change in the

existing statute." *Frost*, 278 U.S. at 526-27. Because the 2015 amendment was an unconstitutional

enactment, it was void *ab initio* and was never law. *Cano*, 2021 WL 3036933, at *8 (citing *Trujillo*

*v. Free Energy Sav. Co., LLC*, No. 5:19-CV-02072-MCS-SP, 2020 WL 8184336, at *4 (C.D. Cal.

Dec. 21, 2020)). "If the unconstitutional 2015 amendment was "'a nullity' and 'void' when

enacted," it stands to reason that the original robocall restriction was not impacted by the subsequent

addition of the unconstitutional government-debt exception."*Callier*, 2021 WL 8053527, at *12-13

(noting that this is the "same conclusion" reached by the majority of district courts that have

addressed this issue) (citations omitted).

Moreover, footnote 12 of the plurality opinion explicitly states that the decision did "not

negate the liability of parties who made robocalls covered by the robocall restriction." *AAPC*, 140

S. Ct. at 2355 n.12. "Although some district courts have interpreted footnote 12 as only *dicta*, even

if it were only *dicta*, it still indicates that the entirety of the TCPA call restrictions should not be

invalidated." *Samataro*, 2021 WL 4927422, at *4 (citations omitted); *see McCurley v. Royal Sea*

*Cruises, Inc.*, No. 17-CV-00986-BAS-AGS, 2021 WL 288164, at *3 (S.D. Cal. Jan. 28, 2021)

("[T]his Court concludes that Justice Kavanaugh's statement that [footnote 12] is not *dicta* because

it was joined by six other justices. However, even if it was *dicta*, this Court finds it signals the intent

of the Supreme Court and what it would hold in future cases and, as such, may not be cavalierly

dismissed by a district court."). As explained by a court in this district, the Supreme Court in *AAPC*

held that "the *law* is Section 227(b)(1)(A)(iii) without the government-debt exception." *Cano*, 2021

WL 3036933, at *9 (citing *AAPC*, 140 S. Ct. at 2356) (emphasis original).  Concluding that §

227(b)(1)(A)(iii) without the government-debt exception applies retroactively "is consistent with

the constitutional powers of the federal courts, principles of statutory interpretation, and the

mandatory authority of *AAPC* and *Frost*." *Id.*  The well-reasoned opinion in *Cano* is persuasive and

supports adoption of the majority view that TCPA's robocall restriction without the government-

debt exception remained in effect between 2015 and 2020, and its enforcement is constitutional. *See*

*Cano*, 2021 WL 3036933, at *9; *Horton*, 2021 WL 5868328, at *3; *Callier*, 2021 WL 8053527, at

*13; *Samataro*, 2021 WL 4927422, at *4; *Thomas*, 2021 WL 4127144, at *6-7; *Pepper*, 2021 WL

4084514, at *3 n.2; *see also Lindenbaum*, 13 F.4th at 528.

   Defendant's motion to dismiss on this basis should therefore be denied.

## C. <u>Plausibility of Claim</u>

   Defendant next argues that Plaintiff's TCPA claim must be dismissed because her allegations

fail to raise a right to relief above the speculative level. (doc. 15 at 17.)

   As discussed, § 227(b) of the TCPA makes it unlawful for any person "to make any call

(other than a call made for emergency purposes or made with the prior express consent of the called

party) using any automatic telephone dialing system or an artificial or prerecorded voice ... to any

telephone number assigned to a ... cellular telephone service for which the called party is charged

for the call." 47 U.S.C. § 227(b)(1)(A)(iii).  The FCC's implementing regulations prohibit, among

other things, any person or entity from using an automatic telephone dialing system or an artificial

or prerecorded voice to call any cellular telephone number absent emergency purposes or the prior

express consent of the called party, including "any telephone call that includes or introduces an

advertisement or constitutes telemarketing." 47 C.F.R. §§ 64.1200(a)(1)(iii), (a)(2).

To state a plausible claim for relief under the TCPA, a plaintiff "is expected to plead sufficient facts relating to the calls [s]he claims to have received on h[er] own phone to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements." *Cunningham v. Florio*, No. 4:17-CV-00839-ALM-CAN, 2018 WL 4473792, at *13 (E.D. Tex. Aug. 6, 2018), *adopted by* 2018 WL 4473096 (E.D. Tex. Sept. 18, 2018). Her pleadings must "present sufficient factual context to notify [the defendant] of the conduct charged." *Crawford v. Target Corp.*, No. 3:14-CV-0090-B, 2014 WL 5847490, at *4 (N.D. Tex. Nov. 10, 2014). "Facts relevant to this determination include the amount of calls received, the approximate date and time they were received, the phone number placing the calls, and the contents of the calls." *Cunningham v. Britereal Mgmt., Inc.*, No. 4:20-CV-144-SDJ-KPJ, 2020 WL 7391693, at *5 (E.D. Tex. Nov. 20, 2020), *adopted by*, 2020 WL 7388415 (E.D. Tex. Dec. 16, 2020) (citations omitted).

Here, Plaintiff alleges that Defendant sent multiple prerecorded voice messages to her cellular telephone number between 2017 and 2020, promoting the sale of its vehicles and its vehicle maintenance and repair services. (doc. 12 at 2-3.) She provides four phone numbers that were used to contact her, as well as information that connects Defendant to those numbers, and describes the contents of these messages. (*Id.*) She contends, "upon information and belief," that Defendant possesses "transmission logs detailing the specific dates and times of each call it made to [her number] utilizing a prerecorded message." (*Id.* at 2.) She also provides additional facts of a specific prerecorded voice message that was sent to her phone number on January 29, 2018, which promoted Defendant's vehicle service department. (*Id.* at 3.) Plaintiff has offered sufficient factual allegations in support of her TCPA claim against Defendant. *See Crawford*, 2014 WL 5847490, at *4.

Citing *Cunningham v. TechStorm, LLC*, No. 3:16-CV-2879-M, 2017 WL 721079, at *2

(N.D. Tex. Feb. 23, 2017), Defendant argues that Plaintiff's allegations are insufficient to state a claim under the TCPA because she "has failed to adequately plead facts that specify the time, date, or even the number of the calls she allegedly received," and she "has failed to adequately plead facts that allow the Court to make a reasonable inference that [it] is liable for the alleged misconduct." (doc. 15 at 18-20.) In *Techstorm*, the complaint generally alleged that the defendant called the plaintiff a hundred times over a two-year period, but it did not provide "sufficient factual allegations regarding the source, time, and frequency of the calls," and it did not contain any facts "identifying [the defendant] specifically, such as by a phone number or the contents of the message" to connect the defendant to the alleged misconduct. *See* 2017 WL 721079, at *2. Unlike the plaintiff in *Techstorm*, Plaintiff provides the telephone numbers that Defendant allegedly utilized to contact her, and she sufficiently details the contents of the prerecorded voice messages to adequately link them to Defendant. (*See* doc. 12 at 2-3.)  Even though Plaintiff only provides the date of one instance where she received a prerecorded voice message from Defendant, and she does not plead the approximate number of additional messages or dates those messages were received during the period between 2017 and 2020, she presents other factual allegations regarding the nature and placement of the offending messages sufficient to give Defendant proper notice of its alleged misconduct under the TCPA. *See Britereal*, 2020 WL 7391693, at *6 ("The Court concludes Plaintiff has provided Defendants sufficient notice of the claims against them, and discovery could reasonably reveal evidence pertaining to these allegations."); *see also Crawford*, 2014 WL 5847490, at *3 (explaining that "the absence of certain particularities of an alleged TCPA violation" does not warrant dismissal of a complaint for failure to state a claim, as "some information with respect to the calls can be independently verified through discovery and is not essential to putting defendants on notice of the

16

conduct charged") (citing cases).

Plaintiff has alleged sufficient facts to state a claim under the TCPA.

## IV.  RECOMMENDATION

Defendant's motion to dismiss should be **DENIED**.

**SO RECOMMENDED** on this 16th day of May, 2022.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE